UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL EDWARD KEITH, JR.,

                Petitioner,                Case No. 1:12-cv-71

v.                                 Honorable Paul L. Maloney

SHIRLEE HARRY,

                Respondent.

_____/

## OPINION

        This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. On October 20, 2006, an Ottawa County Circuit Court jury convicted Petitioner Michael Edward Keith, Jr., of three counts of first-degree criminal sexual conduct (victim under 13 years of age) (CSC 1), in violation of MICH. COMP. LAWS § 750.520b(1)(a). On November 20, 2006, the trial court sentenced Petitioner to 9 to 20 years' imprisonment.[1] Petitioner appealed his convictions to the Michigan Court of Appeals, raising three issues: (1) the trial court's amendment of the information, after proofs closed, to assert a penile/genital opening penetration instead of a penile/vaginal penetration was improper (2) the trial court improperly denied Petitioner's motion for directed verdict, made before amendment of the information, where there was insufficient evidence to support a conviction based on penile/vaginal penetration, and (3) the trial court abused its discretion in denying Petitioner's motion for new trial. (Pet.'s

_____

[1] Petitioner was released on parole on October 20, 2015; he has a discharge date from parole of October 20, 2017. http://mdocweb.state.mi.us/otis/otis2profile.aspx?mdocNumber=624999.

Appeal Br., ECF No. 24-6, PageID.956.)  In a 4-page unpublished opinion issued July 10, 2008, the court of appeals affirmed the convictions.  (Mich. Ct. App. Op., ECF No. 1-1, PageID.6-9.)

Petitioner's appellate counsel failed to provide Petitioner the appellate court's ruling on a timely basis, but then told Petitioner he would file an application for leave to appeal on Petitioner's behalf in the Michigan Supreme Court.  (Pet., ECF No. 1, PageID.3.)  Counsel failed to do so.  On April 16, 2010, new counsel asked the court of appeals to reissue its opinion.  (Mich. Ct. App. Docket Sheet, ECF No. 1-3, PageID.11-13)  The court of appeals reissued its opinion on May 20, 2010.[2]  (*Id.*)  On July 15, 2010, Petitioner filed an application for leave to appeal in the Michigan Supreme Court raising the first and third issue[3] Petitioner had raised in the court of appeals: the trial court should not have permitted amendment of the information after the close of proofs but should have granted Petitioner a new trial. (Pet.'s App. for Leave to Appeal, ECF No. 24-7, PageID.983.)  The supreme court denied leave on October 26, 2010.  (Mich. Ord., ECF No. 1-2, PageID.10.)

Petitioner filed his initial habeas petition (ECF No. 1) in this Court on January 24, 2012, the last day to timely file under 28 U.S.C. § 2244(d)(1).  (Op., ECF No. 5, PageID.102-103.)[4]  Petitioner

---

[2]The Michigan Supreme Court has directed the Michigan Court of Appeals to reissue opinions where a party demonstrates it has been prejudiced by not timely receiving a copy of the court of appeals' decision.  *See, e.g., Keen v. Warden, Thumb Corr. Facility*, 509 N.W.2d 148 (1993).  The practice permits strict adherence to the fifty-six day period for filing applications for leave to appeal in the Michigan Supreme Court.  *Id.*, (Levin J., concurring).  In Petitioner's case, the Michigan Court of Appeals afforded Petitioner that relief on its own.

[3]Petitioner specifically disclaimed any intent to raise the directed verdict/sufficiency issue he had raised in the Michigan Court of Appeals.  (Pet.'s App for Leave to Appeal, ECF No. 24-7, PageID.993) ("The Court [of Appeals] also rejected the Defendant's directed verdict analysis (not presented on appeal to this Court) . . . .").

[4]The Court determined that the petition was timely in its February 9, 2012 Opinion.  (ECF No. 5.)  Nonetheless, Respondent filed a motion to dismiss the petition as untimely because of the time that passed between the issuance of the two opinions from the Michigan Court of Appeals.  (ECF No. 23.)  The Court denied the motion as procedurally inappropriate.  (Ord., ECF No. 25.)  Respondent's timeliness challenge  is also without merit substantively.   A state court's decision to reopen a direct appeal resets the statute of limitations. *See Gonzalez v. Thaler*, 132 S. Ct. 641 (2012)

then filed a motion for relief from judgment under MICH. CT. R. 6.500 et seq. in the Ottawa County Circuit Court raising new issues, including the third and fourth issues presented in his amended habeas petition. (Ottawa Cty. Circuit Ct. Docket, ECF No. 24-1, PageID.331; Pet'r's Mot. and Br., ECF No. 24-10, PageID.1186-1232; Am. Pet., ECF No. 17, PageID.288-289.) Petitioner then sought a stay of this action to permit him to exhaust his remedies in the state courts. with respect to the additional issues. (ECF No. 3.) The Court granted that relief. (Op. and Order, ECF Nos. 5, 6.)

The Ottawa County Circuit Court denied Petitioner's motion for relief, initially on March 12, 2012 (Op. and Ord., ECF No. 24-10, PageID.1274-1280), and upon reconsideration on April 9, 2012 (Ord., ECF No. 24-10, PageID.1282). Petitioner sought leave to appeal that denial in the Michigan Court of Appeals and the Michigan Supreme Court. Those courts denied leave on July 3, 2013, and December 23, 2013, respectively. (Mich. Ct. App. Ord., ECF No. 24-8, PageID.1011; Mich. Ord., ECF No. 24-9, PageID.1122.) Petitioner then returned to this Court.

In Petitioner's amended petition he raises four issues:

I.     The Defendant was denied his due process right to a fair trial where the prosecution was permitted to make a[n] after the fact amendment of the charges against the defendant resulting in a deprivation of notice of the charges against him.

II.    There was insufficient evidence for a rational jury to convict the defendant of CSC 1.

III.   Mr. Keith was denied his constitutional right [to] effective assistance of trial counsel where counsel failed to address repressed memory, negate prosecution experts, rebut prejudicial testimony and preserve issues.

---

(citing *Clay v. United States*, 537 U.S. 522, 531 (2003)).

IV.    The defendant was denied his right to effective assistance of Appellate counsel where Appellate counsel failed to investigate an Ineffective Assistance of Counsel claim against trial counsel that did not properly preserve the issues on appeal. This issue also presents good cause for procedural defaults in the State Court.

(Am. Pet., ECF No. 17, PageID.284-289.)  The first issue was addressed in the Michigan Court of Appeals opinion affirming the convictions. *People v. Keith*, No. 276081, 2008 WL 2697431 (Mich. Ct. App., July 10, 2008).[5]  A variant of the second issue[6] was also addressed by the court of appeals. *Id.* The second issue, however, was not raised in the Michigan Supreme Court on direct appeal, nor was it raised in Petitioner's post-conviction motion.  The last two issues were addressed in Petitioner's motion for relief from judgment in the Ottawa County Circuit Court.

## **Factual Background**

Petitioner's trial began on October 18, 2006.  The Judge Wesley Nykamp read the charges to the jury at the beginning of voir dire:

The Information in this case charges the defendant, Michael Edward Keith Jr., with the crimes of criminal sexual conduct in the first degree.

Count Number 1 charges that Michael Edward Keith Jr. did engage in sexual penetration, to-wit:  Penile/vaginal, with [Complainant], said person being under 13 years of age; contrary to Michigan law.

And those alleged contacts occurred in Grand Haven Township, Ottawa County, Michigan, between June 2003 and August of 2003.

---

[5]The opinion on Petitioner's direct appeal cited herein will be the initial opinion issued on July 10, 2008.  That opinion is identical to the opinion reissued on May 20, 2010.  *Compare* (Mich. Ct. App. July 10, 2008 Op., ECF No. 1-1, PageID.6-9) and (Mich. Ct. App. May 20, 2010 Op., ECF No. 24-6, PageID.946-949).

[6]The sufficiency argument Petitioner raised on his direct appeal was based entirely on the prosecutor's failure to provide any evidence of penile/vaginal penetration. (App.'s Appeal Br., ECF No. 24-6, PageID.964-965.)  In his habeas petition, Petitioner simply attacks the credibility of the Complainant and characterizes her testimony as unreliable "'repressed memory' testimony."   (Pet.'s Mem., ECF No. 13, PageID.237-240.)

The second count charges that he did engage in sexual penetration, to-wit: Penile/vaginal, with [Complainant], said person being under 13 years of age, contrary to Michigan law.

And the third count and identical language charges that Michael Edward Keith Jr. did engage in sexual penetration, to-wit: Penile/vaginal, with [Complainant], said person being under 13 years of age, contrary to Michigan law.

(Oct. 18, 2006 Trial Tr., ECF No. 24-2, PageID.346-347.)

The Complainant was nine years old when she testified at Petitioner's trial. (*Id.*, PageID.476.) The Complainant testified that Petitioner was the babysitter for her and her three older brothers during the summer of 2003, when she was six years old. (*Id.*, PageID.478.) The Complainant described three specific instances when Petitioner came into her bedroom, removed her clothing, and "put his private in mine." (*Id.*, PageID.486, 492, 494.) The Complainant testified that Petitioner assaulted her "mostly every time he came over . . . ." (*Id.*, PageID.495.) But, she only recalled the three specific instances identified above. The Complainant testified that she did not tell anyone else what Petitioner was doing to her because he threatened to hurt her family. (*Id.*, 495-497.) The Complainant reported Petitioner's actions two years later, the day after she saw a videotape at school regarding safe touches and unsafe touches. (*Id.*, PageID.453, 478.)

Dr. N. Debra Simms testified as an expert in pediatrics and child abuse. (*Id.*, PageID.523-524.) Along with Nurse Julie Mascorrro, Dr. Simms conducted a thorough examination of the Complainant after she reported Petitioner's sexual abuse. (*Id.*, PageID.525-534.) Dr. Simms testified that there was probably abuse. (*Id.*, PageID.534-535.) Dr. Simms testimony indicated, however, that it was unlikely that

the penetrations that the Complainant endured were vaginal; rather, they were likely labial.  (*Id.*, PageID.535, 538-540, 550-554.)

Petitioner testified he worked as a babysitter for Complainant and her brothers during the summer of 2003.  (Oct. 19, 2006 Trial Tr., ECF No. 24-3, PageID.703-705.)  Petitioner testified that he never undressed the Complainant, never undressed himself in front of her, never touched her inappropriately, never put his penis in her vagina, never touched her body anywhere with his penis, never put his penis in any kind of close proximity to the Complainant, and never threatened her or her family.  (*Id.*, PageID.716-718, 723, 725-726.)

The prosecutor presented many other witnesses including Heidi Riley, the person who presented the "safe touches" video to the Complainant's class that prompted the Complainant to report the assaults; Dana Darrow, the Complainant's third grade teacher; and Thomas Hicks, the Complainant's principal, the person to whom she initially reported the assaults.  The prosecutor also presented testimony from Nurse Julie Muscarro; the Complainant's three brothers (referenced herein as Brother 1, Brother 2, and Brother 3, based on the order in which they testified); crime scene technician Shauna Vugteveen; the Complainant's mother, and investigating detective Jeremy Baum.  Petitioner testified and then also presented several witnesses: Petitioner's family members; Petitioner's friends; friends of Petitioner's family; family of Petitioner's friends; and one of Petitioner's teachers.  Petitioner's witnesses testified regarding Petitioner's reputation for honesty.

After the close of proofs, Petitioner moved for a directed verdict.  (Oct. 20, 2006 Trial Tr., ECF No. 24-4, PageID.854.)  Petitioner argued that the Information described three acts of penile/vaginal penetration and that, based on Dr. Simms' testimony, there was not vaginal penetration; there was only

-6-

labial penetration.  (*Id*., PageID.854-855.)  The prosecutor countered that proof of any entry, no matter

how slight, sufficed to establish CSC I.  (Id., PageID.855-856.)  The court sided with the prosecutor:

> The Court finds that there is no problem with notice of the nature of the charge that is
> before the Court based on the language in the Information.  The Court does believe that
> the better language to have used in that charge would have been penile/genital opening.
> And the Court will amend the Information to use that language as opposed to the vaginal
> language.  And that amendment is based on proofs as presented by Doctor Simms.  The
> motion is denied.

(*Id*., PageID.856-857.)  The jury reached a verdict within a few hours: guilty of the three charged counts

of CSC I.  (Id., PageID.917.)

On November 20, 2006, the date scheduled for sentencing, the court heard argument

regarding Petitioner's motion for new trial based, in part, on the amendment of the Information.  The court

denied the motion:

> The sexual penetration described in the statute is defined as, any intrusion however
> slight of any part of a person's body into the genital opening.  And that statute was charged
> specifically in the Information as to three counts that were tried before the Court.  So there
> is no question or any surprise concerning proofs which might suggest that the choice of the
> word vaginal was not the best choice of words in describing the nature of the penetration.
>
> However, we can also look at the commonly understood use of that word.
> Websters Dictionary describes vaginal as of, relating to or affecting the genital area.  With
> that understanding, the common understanding of the word vaginal, it would not appear to
> be entirely out of line.  We are not asked in charging to charge in precise medical terms to
> the offense which is charged.
>
> However, after hearing the evidence the Court became convinced, because Doctor
> Sim[m]s drew the line between the penetration of the labia majora and the vagina, that
> perhaps it would be clearer to the jury if it were merely stated that there was a penetration
> of the genital area, and the Court made that change.

(Nov. 20, 2006 Sentencing Tr., ECF No. 24-5, PageID.926-927.)  The court sentenced Petitioner as

described above.

<u>Discussion</u>

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, PUB. L. 104-132, 110 STAT. 1214 (AEDPA).  *See Penry v. Johnson*, 532 U.S. 782, 792 (2001).  The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  The AEDPA has "drastically changed" the nature of habeas review.  *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655. In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655.  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court.  *Greene v. Fisher*, 132 S. Ct. 38 (2011).  Thus, the inquiry is

-8-

limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 132 S. Ct. at 44).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 2015 WL 1400852, at *3 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (quotations marks omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### I.      Sufficient notice of the charges

Petitioner contends that the amendment of the Information after proofs were closed deprived him of due process. The Due Process Clause of the Fourteenth Amendment mandates that whatever charging method the state employs must give the criminal defendant fair notice of the charges against him so as to provide him an adequate opportunity to prepare his defense. *See*, *e.g.*, *In re Ruffalo*, 390 U.S. 544 (1968); *Blake v. Morford*, 563 F.2d 248 (6th Cir. 1977); *Watson v. Jago*, 558 F.2d 330, 338 (6th Cir. 1977). This requires that the offense be described with some precision and certainty so as to apprise the accused of the crime with which he stands charged. *Combs v. State of Tennessee*, 530 F.2d 695, 698 (6th Cir. 1976). Such definiteness and certainty are required as will enable a presumptively innocent man to prepare for trial. *Id.* "Beyond notice, a claimed deficiency in a state criminal indictment is not cognizable on federal collateral review." *Roe v. Baker*, 316 F.3d 557, 570 (6th Cir. 2002) (quoting *Mira v. Marshall*, 806 F.2d 636, 639 (6th Cir. 1986)). "An indictment which fairly but imperfectly informs the accused of the offense for which he is to be tried does not give rise to a constitutional issue cognizable in habeas proceedings." *Mira*, 806 F.2d at 639. In other words, as long as "sufficient notice of the charges is given in some . . . manner" so that the accused may adequately prepare a defense, the Fourteenth Amendment's Due Process Clause is satisfied. *Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984); *Watson*, 558 F.2d at 338.

The Michigan Court of Appeals resolved Petitioner's challenge as follows:

"Where the original information is sufficient to inform a defendant of the nature of the charge against him, the defendant is not prejudiced by an amendment to cure a defect in the information." *People v. Newson*, 173 Mich.App. 160, 164, 433 N.W.2d 386 (1988). At the time of the offense, MCL 750.520a(o) defined "sexual penetration" as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required." In *People v. Bristol*, 115

-10-

Mich.App. 236, 237–238, 320 N.W.2d 229 (1981), this Court held that the Legislature intended the phrases "intrusion, however slight," and "genital ... openings" within the definition of "sexual penetration" to include any intrusion between the labia majora. Therefore, even if the prosecutor here failed to present proof of vaginal penetration, evidence of penetration of the victim's labia majora could satisfy the "sexual penetration" element of CSC I. *Id.*

The original information sufficiently informed defendant that the prosecutor intended to prove penetration of the victim's genital opening. In *People v. Stricklin*, 162 Mich.App. 623, 633, 413 N.W.2d 457 (1987), we upheld the defendant's CSC I conviction despite an amendment of the information "to reflect a variance in the type of penetration." This Court observed in *Stricklin* that the amended information did not allege a new crime, and did not deprive the defendant of an opportunity to defend at trial. *Id.* We similarly conclude that the amendment of the instant information to specify the precise type of sexual penetration committed by defendant did not prejudice him.

We additionally reject defendant's claim that he would have agreed to the addition of alternate CSC II charges if he had known that the information would be amended. At trial, defendant vehemently denied that he ever touched any portion of the victim's body with his penis, and he does not specifically explain on appeal how, if facing CSC II charges, his trial defense would have differed. Furthermore, defendant could have requested an instruction for CSC II, but failed to do so. We thus conclude that the amendment did not unfairly surprise defendant or deprive him of a sufficient opportunity to present a defense.

*Keith*, 2008 WL 2697431 at *2 (footnote omitted).

Petitioner does not identify how the court of appeals' resolution of this issue is contrary to or inconsistent with clearly established federal law. Although the state court cited state authority in support of its analysis, the analysis is the same: was Petitioner afforded sufficient notice to permit him to defend himself?

Petitioner offers no insight as to how he would have defended himself differently or how his defense was prejudiced. As the Michigan Court of Appeals reasonably found on this record, Petitioner's defense was that his penis did not touch the Complainant at all. There is not room for line-

-11-

drawing in Petitioner's defense. Petitioner offers no reason that a charge that mentioned penile/vaginal penetration would not give notice sufficient to permit him to prepare a defense to penile/genital opening penetration.  Petitioner's habeas issue regarding insufficient notice of the charges has no merit.

## II.      Sufficiency of the evidence

Petitioner next contends that there was insufficient evidence to support his convictions for CSC I.[7]  A § 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  *Id.*  Issues of credibility may not be reviewed by the habeas court under this standard.  *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993).  Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law.  *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

---

[7]Petitioner has never presented this claim in its present form to the Michigan Supreme Court.  *See* note 6 *infra*.  But, his opportunity to do so has passed.  Under Michigan law effective August 1, 1995, a defendant may file one motion for relief from judgment under Michigan Court Rule 6.500 et. seq.  *See* MICH. CT. R. 6.502(G)(1).  Petitioner already has filed his one allotted motion.  He therefore has no available remedy.  "If the claims presented in the federal court were never actually presented in the state courts, but a state procedural rule now prohibits the state court from considering them, the claims are considered exhausted, but are procedurally barred."  *Cone v. Bell*, 243 F.3d 961, 967 (6th Cir. 2001) (citing *Coleman v. Thompson*, 501 U.S. 722, 752-53), rev'd on other grounds, 535 U.S. 635 (2002).  Nevertheless, the U.S. Supreme Court has held that federal courts are not required to address a procedural default issue before deciding against the petitioner on the merits.  *See Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003).  Accordingly, the Court will look past Petitioner's procedural default on this issue and address its merits.

The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319.  Moreover, because both the Jackson standard and AEDPA apply to Petitioner's claims, "'the law commands deference at two levels in this case:  First, deference should be given to the trier of fact's verdict, as contemplated by Jackson; second, deference should be given to the Michigan [trial court's] consideration of the trier of fact's verdict, as dictated by AEDPA.'" *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc) (quoting *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008)).  This standard erects "a nearly insurmountable hurdle" for petitioners who seek habeas relief on sufficiency of the evidence grounds.  *Id.* at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

The Michigan Court of Appeals applied the *Jackson* standard:

Defendant next argues that insufficient evidence supported his CSC I convictions because the prosecutor failed to prove penile-vaginal penetration.  We review de novo defendant's sufficiency of the evidence claims.  *People v. Hawkins*, 245 Mich.App. 439, 457, 628 N.W.2d 105 (2001).  "When determining whether sufficient evidence has been presented to sustain a conviction, a court must view the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt."  *People v. Nowack*, 462 Mich. 392, 399–400, 614 N.W.2d 78 (2000) (internal quotation omitted).

To establish CSC I as charged in this case, the prosecutor had to prove "sexual penetration with another person," and that the other person "is under 13 years of age."  MCL 750.520b(1)(a).  Defendant does not dispute that the victim was under 13 years of age.  As we have previously discussed, evidence of penetration of the labia majora fulfills the "sexual penetration" requirement of the statute.  *Bristol, supra* at 237–238, 320 N.W.2d 229.  Viewing the evidence in the light most favorable to the prosecutor, the victim's testimony provided the jury with sufficient evidence to conclude that defendant sexually penetrated her.  The victim repeatedly identified defendant as her assailant, testified that defendant "put his private in mine," and that after each incident, her "private hurt."  In addition, Dr. Simms testified that the victim "described [the assault] as being

inside, which would mean along the inner labial lips." Although defendant maintains that the victim's version of events contained inconsistencies undermining her credibility, "[t]his Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *People v. Passage*, 277 Mich.App. 175, 177, 743 N.W.2d 746 (2007). We conclude that the record contains sufficient evidence to support a rational jury's determination beyond a reasonable doubt that defendant committed all three CSC I counts, and that the trial court properly denied his motion for a directed verdict. *People v. Strunk*, 184 Mich.App. 310, 325, 457 N.W.2d 149 (1990).

*Keith*, 2008 WL 2697431 at *2 (footnote omitted). Although the court of appeals relied upon the standard identified in *Nowack*, 614 N.W.2d at 81, the *Nowack* court relied on *Jackson* in support of its statement of the sufficiency standard. Thus, it cannot be said that the standard applied by the court of appeals was contrary to clearly established federal law.

In its application of the *Jackson* standard, the court of appeals carefully reviewed the evidence, considering that evidence in a light most favorable to the prosecution. The court's entire analysis is quoted above. The analysis on its face is consistent with, not contrary to, clearly established federal law. The factual findings with respect to the evidence offered by the prosecutor appear to be reasonable.

Petitioner does not even attempt to find fault with the state court's application of the *Jackson* standard or its factual findings. Instead, he simply views the same evidence in a light that favors him and, therefore, reaches different conclusions. Petitioner's entire argument depends on an assessment of the Complainant's credibility, an assessment this Court is not permitted to make on habeas review. *Herrera*, 506 U.S. at 401-02  It is Petitioner's argument, not the state court's determination, that is a patently unreasonable application of the *Jackson* standard. Petitioner's challenge to the sufficiency of the evidence has no merit.

### III.    Ineffective assistance of trial counsel

-14-

Petitioner contends that his trial counsel failed him in several respects: (A) counsel failed to address the issue of repressed memory; (B) counsel failed to engage a defense expert to negate the testimony of Dr. Simms; (C) counsel failed to counter the implication that Petitioner's advertising on an adult-dating website indicated he was of lesser sexual morality; and (D) counsel failed to demonstrate that Petitioner's interest in sexual cross-dressing did not increase or decrease his likelihood to molest a child. (Pet.'s Br., ECF No. 13, PageID.240.)  Through the course of Petitioner's argument, he identifies additional instances of ineffective assistance.  Petitioner argues that counsel failed to object to the testimony of Principal Tom Hicks and Nurse Julie Mascorro with regard to what the Complainant reported to them. (Id., PageID.242.)  Finally, Petitioner contends that (F) counsel failed to explore with Complainant's brothers whether they heard Petitioner sexually assaulting their sister.  (*Id.*, PageID.243-244.)

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).

The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.   Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.   "When deciding ineffective-assistance claims, courts need not address both components of the inquiry 'if the defendant makes an insufficient showing on one.'" *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004) (quoting *Strickland*, 466 U.S. at 697).   "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Strickland*, 466 U.S. at 697.   The Court will measure each of Petitioner's contentions that his counsel rendered ineffective assistance against the *Strickland* standard.

A.      Failure to challenge "repressed memory" testimony

Petitioner challenged trial counsel's effectiveness for the first time in his post-conviction motion for relief from judgment.   In rejecting Petitioner's claims, the trial court expressly relied on the *Strickland* standard:

> Both the state and federal constitutions guarantee a criminal defendant the right to the effective assistance of counsel. *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Aceval*, 282 Mich App 379, 386; 764 NW2d 285 (2009). A claim of ineffective assistance of counsel presents a mixed question of law and fact. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002).   Effective assistance of counsel is presumed. *LeBlanc, supra*, p 578. Defendant bears a heavy burden of proving that counsel's assistance was ineffective. *LeBlanc, supra*.   Defendant must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that but for counsel's errors, there is a reasonable probability that the result of the proceedings would have been different. *People v Frazier*, 478 Mich 231, 243; 733 NW2d 713 (2007).

-16-

(Op. and Order, ECF No. 24-10, PageID.1259-1260.)  With respect to Petitioner's "repressed memory" argument, the trial court concluded that Petitioner had failed to show what evidence regarding "repressed memory" his counsel should have presented or how such evidence would have benefitted the defense.  (*Id.*, PageID.1260.)

The trial court applied *Strickland*, the foundation of clearly established federal law with regard to ineffective assistance of counsel.  Petitioner has failed to indicate how the trial court's determination is contrary to or inconsistent with *Strickland*.  Moreover, Petitioner has failed to show how the trial court's decision was based on an unreasonable determination of the facts in light of this record.  There is nothing in the record to indicate that the Complainant's memories of the sexual assaults were repressed in any way.  To the contrary, the record supports the conclusion that memories of the assaults were consistently, consciously available to the Complainant.  The Complainant testified that between the time Petitioner assaulted her and the time she saw the movie that prompted her report of the assaults, she was "trying to keep my mind off it."  (Oct. 18, 2006 Trial Tr., ECF No. 24-2, PageID.497.)  She simply delayed in reporting them because of fear caused by Petitioner's threats of harm to her family.  (*Id*.)  Petitioner's claim that counsel was ineffective for failing to raise the issue of repressed memory has no merit.

### B.    A defense expert to counter Dr. Simms

Petitioner next attacks counsel's failure to call a defense expert to negate Dr. Simms' testimony; but, he does not identify what that expert might have said or how the testimony might have benefitted the defense.  Dr. Simms repeatedly testified that the physical examination resulted in nonspecific findings (Oct. 18, 2006 Trial Tr., ECF No. 24-2, PageID.536-537, 542.)  Dr. Simms testified that such findings might indicate abuse and they might not.  (*Id*., PageID.533-534.)  During cross-examination, Dr.

Simms testified that the physical findings in the Complainant's case were most likely hygiene-related. (*Id.*, PageID.540-542.)  It is difficult to imagine what a defense expert might have said to "negate" that testimony.  Critically, it is not the Court's obligation to conjure up how counsel's performance fell short or what prejudice may have resulted; it is Petitioner's.  Petitioner has failed to do so here.  He has, again, failed to demonstrate how the state court's rejection of his ineffective assistance claim is contrary to or inconsistent with clearly established federal law.

### C.    The adult-dating website

The prosecutor introduced exhibits showing Petitioner's profile and his "likes and dislikes" from adultfriendfinders.com.  (Oct. 19, 2006 Trial Tr., ECF No. 24-3, PageID.743-748, 754-755.) Petitioner now contends that his counsel should have done more to counter the prosecutor's implication that Petitioner's participation in an adult dating website indicated he had a lower threshold of sexual morality. Petitioner did not raise this issue in the state courts. (*See* Pet.'s Br., ECF No. 13, PageID.240; Br. in Supp. of Mot. for Post-Conviction Relief, ECF No. 24-10, PageID.1213; Mich. Ct. App. Appl. for Leave to Appeal, ECF No. 24-8, PageID.1064; Mich. Appl. for Leave to Appeal, ECF No. 24-9, PageID.1172.)

"If the claims presented in the federal court were never actually presented in the state courts, but a state procedural rule now prohibits the state court from considering them, the claims are considered exhausted, but are procedurally barred." *Cone*, 243 F.3d at 967.  Petitioner's adult-dating website claim is so barred.  The Court must consider whether there is cause and prejudice to excuse Petitioner's failure to present the claims in state court. *See Gray v. Netherland*, 518 U.S. 152, 161-62 (1996); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).  To show cause sufficient to excuse a failure to

raise claims on direct appeal, Petitioner must point to "some objective factor external to the defense" that prevented him from raising the issue in his first appeal or post-conviction motion. *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *see McCleskey v. Zant*, 499 U.S. 467, 497 (1991). A petitioner who fails to demonstrate cause and prejudice cannot have a cognizable claim. *Gray*, 518 U.S. at 162. Further, where a petitioner fails to show cause, the court need not consider whether he has established prejudice. *See Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982) 134 n.43; *Leroy v. Marshall*, 757 F.2d 94, 100 (6th Cir. 1985). Petitioner makes no attempt to show cause for his procedural default; accordingly, he does not have a cognizable claim.

### D.     Cross-dressing

Petitioner contends that his counsel rendered ineffective assistance when he failed to introduce evidence demonstrating that there is no correlation between cross-dressing and likelihood of molesting a child. There is no point in the trial record supplied by the Respondent where Petitioner indicates that he participated in cross-dressing. It is possible that a preference for cross-dressing may have been expressed in Petitioner's adult dating profile or his "likes and dislikes." That information, however, was introduced by way of exhibits that have not been supplied with the Rule 5 materials. It appears a reasonable inference that Petitioner's "likes and dislike" may have provided the framework for the following exchange between the prosecutor and Petitioner's aunt Linda Hoisington:

Q     Do you have an opinion as to whether or not your nephew is a person of good sexual morals?

A     Yes.

Q     And what is that?

-19-

A      His morals in all senses, sexual, spiritual, law abiding, whatever, he knows right from wrong.

Q      Would you say that cross dressing would be a good moral value, yes or no?

A      Depends on the situation.

Q      Would --?

A      Everybody cross dresses for Halloween.

Q      How about looking for couples for transsexual, transvestite, transgender and or erotic chat?  Would that be something that you would think would be good sexual morals in your opinion?

A      My opinion is, to each his own.

Q      How about exhibitionism and voyeurism?  Is that good sexual morals?

A      I would–it is something that I wouldn't expect, but some like bologna, some like salami.

Q      How about bondage and discipline?

A      Same thing.

Q      Same thing, what?

A      (no verbal response).

Q      Is that good sexual morals?

A      It's not my preference, but each person has their own.

Q      How about playing master slave in a sexual fantasy way?

       MR. SIELSKI: Your Honor, I have an objection.  May I approach the bench?
            (Conference at the bench out of the hearing of the jury).

Q      Would it affect your opinion as to whether someone had good moral conduct, if they fantasized about cop/prisoner, master/slave?  Would that affect your opinion?

A       Would you repeat that one.

Q       As to whether someone fantasized about or wanted to fantasize about cop/prisoner, master/slave situations of a sexual nature?  Would that affect your opinion, and if that person was of good --?

A       I heard master/slave. But I didn't hear what you said prior to that.

Q       Cop/prisoner?

A       Cop?

Q       Master/slave, stranger/stranger, if they fantasized about that, would that affect your opinion as to whether or not they were a person of good sexual morals?  Would that affect your opinion?

A       Possibly.

Q       Would it affect your opinion if someone talking about their sexual preferences indicated that "age and experience aren't an issue, I am up to anything."  Would that be a person of good sexual morals in your opinion?

A       Repeat that.

Q       Looking for anyone.

Q       Quote, "looking for anyone that cares to have fun, age and experience aren't really an issue, I am up to basically anything." on a sexual site?  In your opinion is that a person of good sexual morals?

A       No.

(Oct. 19, 2006 Trial Tr., ECF No. 24-3, PageID.768-770.)  This exchange, however, was the only

significant reference to "cross dressing."[8]  Although Petitioner acknowledged that he might have made the

_____

[8]It is also possible that the inference that Petitioner participated in cross-dressing may have followed from this exchange between the prosecutor and Petitioner's father:

Q       So you are testifying that what you know--I guess you were asked the question, are you aware of what's in Michael's room, are you?

-21-

selections that indicated his "likes and dislikes" for the adultfriendfinders.com website, he also testified that they were not true.  (Oct. 19, 2006 Trial Tr., ECF No. 24-3, PageID.743) ("Q You said those things?  A Yes.  Q And they are true?  A No, they are not.")

Disagreement by a defendant with tactics and/or strategy will not support a claim of ineffective assistance.  *Strickland*, 466 U.S. at 689.  Matters of trial strategy, such as determinations regarding which witnesses to present and what questions to ask, are presumed correct and are generally not evaluated in hindsight or second-guessed upon habeas review. *McQueen v. Scroggy*, 99 F.3d 1302,

---

| A | A lot of stuff. |
|---|---|
| Q | Were you aware of what he kept in his closet? |
| A | In his closet? |
| Q | Yes. |
| A | Not everything, but clothes and– |
| Q | Anything inappropriate? I don't want to cross a line. |
| A | I didn't go through everything. |
| Q | So you don't know if he had things in his closet,-- |
| A | Pardon? |
| Q | If there were things in his closet, were they his? |
| A | Unless they were mine --or ours. There's a lot of--there were things in Michael's closet when he came back from college that was my stuff that was in there. |
| Q | Is this your stuff--? (indicating) |
| A | No. |
| [Prosecutor]: | I am going to choose not to pursue that anymore. |

(Oct. 20, 2006 Trial Tr., ECF No. 24-4, PageID.831-832.) Although Petitioner references that exchange, even he notes that "[t]he item was not identified for the record."  (Pet.'s Br., ECF No. 13, PageID.225 n3.)  Thus, it is not clear whether this exchange relates to cross dressing.

1311 (6th Cir. 1996).  Here, there is an obvious strategic reason to not offer expert testimony with regard to the lack of correlation between cross dressing (or threesomes, erotic chat, exhibitionism, voyeurism, bondage and discipline, or dominance fantasies) and child molestation.  Petitioner provided sworn testimony that his online stated preferences for such activities were not true.  Expert testimony regarding a lack of correlation between child molestation and sexual preferences that Petitioner stated were not his own would have been irrelevant.  Certainly Petitioner has failed to demonstrate that the state court's rejection of his ineffective assistance claim is contrary to or inconsistent with clearly established federal law.

                      E.      Hearsay testimony of the Complainant

        Petitioner contends that his trial counsel was ineffective for failing to challenge the

introduction of hearsay statements by Complainant regarding the abuse.  Those statements were the subject

of testimony from Principal Tom Hicks and Nurse Julie Mascorro.  The trial court did not specifically

address Petitioner's contention.  Petitioner anticipates the likely arguments for admissibility in his brief.

With respect to Principal Hicks' testimony, Petitioner claims that it could not have been admitted under the

"tender years" exception.[9]  Petitioner contends that the exception is inapplicable because too much time

passed between the incident and the disclosure.  Petitioner has cited no Michigan authority, and the Court

has found no Michigan authority, that puts a specific time limit on the fear that is caused when a perpetrator

of sexual assault threatens the family of the victim if the victim discloses the abuse.[10]  Thus, Principal Hicks'

testimony appears to fit squarely within the "tender years" exception and for that reason would be

admissible over a hearsay objection.

        The testimony of Nurse Julie Mascorro also fits squarely within an exception to the hearsay

rule.  Michigan Rule of Evidence 803(4) excludes from the operation of the hearsay rule: "Statements

made for purposes of medical treatment or medical diagnosis in connection with treatment and describing

---

[9]Michigan Rule of Evidence 803A provides: "A statement describing an incident that included a sexual act performed with or on the declarant by the defendant or an accomplice is admissible to the extent that it corroborates testimony given by the declarant during the same proceeding, provided:  (1) the declarant was under the age of ten when the statement was made; (2) the statement is shown to have been spontaneous and without indication of manufacture; (3) either the declarant made the statement immediately after the incident or any delay is excusable as having been caused by fear or other equally effective circumstance; and (4) the statement is introduced through the testimony of someone other than the declarant."  MICH. R. EVID. 803A.

[10]The Complainant testified that she did not report the incidents because she was afraid that Petitioner would harm her family.  (Oct. 18, 2006 Trial Tr., ECF No. 24-2, PageID.497.)  She was convinced to report by the movie she saw at school.  (Id.)

medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably necessary to such diagnosis and treatment." MICH. R. EVID. 803(4). "Particularly in cases of sexual assault, in which the injuries might be latent, such as contracting sexually transmitted diseases or psychological in nature, and thus not necessarily physically manifested at all, a victim's complete history and a recitation of the totality of the circumstances of the assault are properly considered to be statements made for medical treatment." *People v. Mahone*, 816 N.W.2d 436, 440 (Mich. Ct. App. 2011). Thus, with respect to Nurse Mascorro's testimony as well, it appears that any objection trial counsel might have raised to the testimony would have been futile.

"Omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013). But even if Petitioner's counsel might have raised colorable objections to this testimony, Petitioner cannot show prejudice from counsel's failure to raise them. The testimony offered was entirely cumulative of the testimony the Complainant herself offered both as to the events of sexual assault and her reporting of those events. The introduction of cumulative testimony is harmless. *Gover v. Perry*, 698 F.3d 295, 301 (6th Cir. 2012) (affirming district court's determination that testimony was cumulative and therefore harmless); *United States v. Bugg*, 105 F. App'x 25, 27 (6th Cir. 2004) ("Thus, because Early's testimony was cumulative, any hearsay error was harmless, as it is not 'more probable than not that the error materially affected the verdict.'"); *United States v. Pugh*, 404 F. App'x 21, 27 (6th Cir. 2010) ("Thus, the hearsay statements at issue were cumulative, rendering any mistake on the part of the district court harmless."); *Anthony v. DeWitt*, 295 F.3d 554, 564 (6th Cir. 2002) (finding that because hearsay testimony was cumulative of other evidence establishing the same fact, admitting it was harmless error under *Brecht v. Abrahamson*, 507 U.S. 619 (1993)).

F.      Did the Complainant's brothers hear the assaults?

Finally, Petitioner contends his trial counsel was ineffective because he failed to explore with the Complainant's brothers whether they heard Petitioner assaulting their sister.  Specifically, Petitioner argues:

> [The Complainant] testified that she could hear her brothers in the pool from her bedroom while the window was open.  Further, she testified that her window was open during the alleged sexual assaults. Thus, according to her testimony she could hear her brothers during the assaults through her open window.  Logically, if [the Complainant] could hear the boys in the pool, they could have heard Mr. Keith sexually assaulting her in her room.  The fact that they did not would indicate that the story "just ain't so."  Mr. Sielski made a point to get [the Complainant] to specifically testify about this, but then, inexplicably, dropped the issue entirely during proofs.  Additionally, he did not mention it during his closing argument.

(Pet.'s Br., ECF No. 13, PageID.243.) Petitioner's characterization of counsel's actions with respect to this issue is simply wrong.

The Complainant testified about three specific instances of sexual assault.  With respect to the first instance, the Complainant testified that she could hear her brothers outside through her open bedroom window.  (Oct. 18, 2006 Trial Tr., ECF No. 24-2, PageID.481.)  The Complainant testified that she said three things during the assault: she twice asked Petitioner "What are you doing?"; then, she asked Petitioner to stop.  (*Id.*, PageID.483, 487.)  Petitioner never testified that she called out during the assault.  Petitioner also did not testify that she called out during the second assault; rather, she said she did not say anything because she was scared.  (*Id.*, PageID.492.)  There is no indication in the record that either Petitioner or the Complainant said anything during the third assault.  (*Id.*, PageID.493-495.)  During cross-

-26-

examination, the Complainant testified that even though the assaults hurt her, she did not cry out. (*Id.*, PageID.507.)

   If Petitioner's counsel had chosen not to pursue the issue of the Complainant's brothers hearing the assault, that choice would have been understandable as there was no reason to believe there was anything to be heard. But, contrary to Petitioner's claim, his counsel did explore the issue with Brother 2:

> Q Did you ever hear [the Complainant] yell out sometime like, stop or no or anything like that?
>
> A No.
>
> Q Did you ever see her crying that summer while Michael was there?
>
> A No.
>
> Q Did she ever say–did you ever hear her say, Michael, get away from me or anything like that?
>
> A I don't remember.

(Oct. 19, 2006 Trial Tr., ECF No. 24-3, PageID.604-605.) Petitioner's counsel also asked Brother 3 whether he heard anything from inside the Complainant's room. (*Id.*, PageID.618.) Brother 3 responded he did not usually hear anything but that sometimes he heard music. (*Id.*) Petitioner's counsel failed to ask only Brother 1 whether he had heard anything when the Complainant was alone in the house with Petitioner. Nonetheless, in closing argument Petitioner's counsel stated:

> Is there evidence of crying, not just because it hurt her, but just because it was that that was happening to her. She had an idea, as any child would, that this wasn't supposed to happen. We don't have that, do we. We don't have her brothers hearing her call out.

(Oct. 20, 2006 Trial Tr., ECF No. 24-4, PageID.878.)

Petitioner's argument that his counsel failed to ask the Complainant's brothers whether they heard anything from their sister when she was alone in the house with Petitioner is unsupportable on this record. Plaintiff's additional contention that his counsel failed to raise the issue in closing argument is likewise unsupportable. Accordingly, his claim that his trial counsel was ineffective with respect to this issue is not only meritless, it is frivolous as well.

### IV.   Ineffective assistance of appellate counsel

Petitioner next contends that he is entitled to habeas relief because his appellate counsel rendered ineffective assistance in two respects: (A) appellate counsel failed to raise the various ineffective assistance of trial counsel issues identified above, *see* § III *infra*; and (B) appellate counsel failed to challenge the trial court's refusal to permit Petitioner to introduce evidence that the Complainant's mother was the victim of sexual abuse. (Pet.'s Br., ECF No. 13, PageID.247-248.) The trial court rejected both claims. (Op. and Order, ECF No. 24-10, PageID.1260-1261.)

### A.   Failure to raise ineffective assistance of trial counsel

The Sixth Circuit has held that "'appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit.'" *Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). *See also Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010). As set forth fully above, Petitioner's arguments that his trial counsel rendered ineffective assistance lack merit. Accordingly, appellate counsel's failure to raise those arguments cannot constitute ineffective assistance.

### B.   Failure to challenge the trial court's exclusion of evidence regarding sexual abuse suffered by the Complainant's mother.

Petitioner contends the trial court should have permitted him to introduce evidence that the Complainant's mother was the victim of sexual abuse:

> Defense counsel repeatedly attempted to introduce evidence that the Complainant's mother was the victim of sexual abuse. He did not offer the testimony to suggest that she was a woman of loose morals and therefore unworthy of belief, (e.g. the classic reason for barring rape shield testimony). He attempted to introduce this evidence to show a bias on her part and explain why she might see symptoms of sexual abuse from innocuous conduct. This Court repeatedly shut Defense counsel's bid down.
>
> Nothing in the text of Michigan's rape shield law applies to either third party witnesses or the Defendant. At most, this Court can extract a generalized policy statement by analogy that a person's private sexual matters should ordinarily not come in, but if this is the case, such a rule should be consistently applied to both sides[.]
>
> The case for admitting the mother's prior sexual abuse history is even more compelling. It shows a bias on her part to take ambiguous behavior and resolve the ambiguities in favor of finding sexual abuse.

(Pet.'s Br., ECF No. 13, PageID.248-249.) The logic behind Petitioner's argument is elusive. Although one can certainly conceive of a case where a mother's prior experience as a victim of sexual abuse might lead that mother to perceive such abuse even where none exists and further lead that mother to prompt her child to manufacture such claims. It is beyond dispute that such a scenario did not play out in this case.

Instead, here, despite evidence that might understandably raise concern, such as irritation in the Complainant's private area, the Complainant's mother was not alarmed. (October 19, Trial Tr., ECF No. 24-3, PageID.662.) The Complainant's mother even considered having Petitioner back to babysit the next summer. (*Id*., PageID.663.) The Complainant did not report the sexual assaults based on prompting from her mother; she did not even report the assaults to her mother.[11]

---

[11]Complainant's mother heard about the report from Complainant's principal. (Oct. 19, 2006 Trial Tr., ECF No. 24-3, PageID.638-639.) Petitioner's trial counsel rightfully acknowledged in his closing argument that Complainant' report was prompted by the video she saw in school. (Oct. 20, 2006 Trial Tr., ECF No. 24-4, PageID.883-884.)

Case 1:12-cv-00071-PLM-PJG   ECF No. 26 filed 11/16/16   PageID.1314   Page 30 of 32

On this record, the trial court's determination that evidence regarding a prior sexual assault against the Complainant's mother was irrelevant appears eminently reasonable. Thus, Petitioner's challenge to the exclusion of the evidence has no merit. Where a claim lacks merit, appellate counsel is not ineffective in declining to raise the issue on direct appeal. *See Moore v. Mitchell*, 708 F.3d 760, 776 (6th Cir. Feb. 26, 2013) ("[A] petitioner cannot show that appellate counsel was ineffective for failing to raise a claim on appeal if the underlying claim itself lacks merit."); *Burton v. Renico*, 391 F.3d 764, 781-82 (6th Cir. 2004) (where claim of prosecutorial misconduct lacks merit, counsel is not ineffective in declining to raise issue on appeal). Accordingly, the trial court's rejection of Petitioner's contention that his appellate counsel was ineffective is neither inconsistent with or contrary to clearly established federal law. Petitioner has not established entitlement to habeas relief.

## Conclusion

In light of the foregoing, the Court will summarily deny Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted. *See*

*Love v. Butler*, 952 F.2d 10 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

A Judgment and Order consistent with this Opinion will be entered.


Dated:   November 16, 2016                    /s/ Paul L. Maloney
                                              Paul L. Maloney
                                              United States District Judge